# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

JUDITH SKIBA                                                           PLAINTIFF

v.                                                        CIVIL NO. 1:16cv444-HSO-JCG

ROBERT SASSER, ET AL.                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION [15] TO DISMISS AND/OR TO COMPEL ARBITRATION

BEFORE THE COURT is Defendants Robert Sasser, CEO, Dollar Tree Company Parent Company; Gary Philbin, President of Family Dollar Company, Subsidiary Company of Dollar Tree Company; Aaron Hendricks, District Manager of Family Dollar Company, Subsidiary of Dollar Tree Company; and Joe Young, Manager of Family Dollar Company, Subsidiary of Dollar Tree Company's Motion [15] to Dismiss and/or to Compel Arbitration filed March 28, 2017. In response, Plaintiff Judith Skiba filed an Answer [18] on April 17, 2017, which was amended by Motion [20] on April 26, 2017. The time for Defendants to file a reply has passed. For the reasons that follow, the Court finds that Defendants' Motion should be granted, the parties should be ordered to submit this matter to arbitration, and this case should be dismissed without prejudice.

## I. BACKGROUND

This case arises out of pro se Plaintiff Judith Skiba's ("Plaintiff") employment at the Family Dollar Store in Moss Point, Mississippi. Compl. [1] at 3. On February 8, 2016, Plaintiff filed a Charge of Discrimination under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), with the Equal Employment Opportunity Commission ("EEOC"). *See* EEOC documents [18-7] at 2. Plaintiff claimed that she had been discriminated against based upon her "race (White)." *Id*. Plaintiff alleged that she was hired in 2014, but beginning on January 25, 2015, was continuously subjected to racial slurs and vulgar language by a "Black coworker" which created a hostile work environment. *Id*. When she complained to her Manager and to the corporate offices, Plaintiff charged that her work hours were decreased while "Blacks were getting favoritism by getting more hours." *Id*. Plaintiff contends that she was the only remaining "White employee" at the store when she was constructively discharged by being forced to resign due to the deplorable work conditions. *Id*. On October 7, 2016, the EEOC issued its Dismissal and Notice of Rights informing Plaintiff that it was not able to conclude that Plaintiff had been discriminated against under Title VII, but that if she desired to file suit she must do so within 90 days. *Id*. at 1.

On December 23, 2016, Plaintiff, proceeding pro se, filed her Complaint [1] advancing claims under Title VII and for violations of Mississippi Code § 25-9-103(c) and § 97-3-107 against Defendants Robert Sasser, CEO, Dollar Tree Company Parent Company; Gary Philbin, President of Family Dollar Company, Subsidiary Company of Dollar Tree Company; Aaron Hendricks, District Manager of Family Dollar Company, Subsidiary of Dollar Tree Company; and Joe Young, Manager of

Family Dollar Company, Subsidiary of Dollar Tree Company ("Defendants").[1]
Compl. [1] at 1-7. Plaintiff seeks compensatory damages, jointly and severally, in the amount of $20,000.00 from each Defendant, as well as punitive damages, jointly and severally, of $20,000.00 from each Defendant.[2] *Id.* at 6.

On March 28, 2017, Defendants filed their Motion [15] to Dismiss and/or to Compel Arbitration. Defendants contend that they are "officers or employees of Family Dollar, Inc. or Dollar Tree Company, the parent company of Family Dollar," and as individuals they are not liable for any alleged violation of Title VII. Defendants further argue that neither of the Mississippi statutes cited by Plaintiff are applicable to employment disputes between private sector employers and employees. According to Defendants, Plaintiff's Complaint fails to state a claim for which relief may be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Mem. in Supp. [16] at 1 - 8. Defendants argue in the

---

[1] The Complaint indicates that Plaintiff's employer was Family Dollar Store. An undated letter from Howard R. Levine, Chairman and Chief Executive Officer of Family Dollar Store, Inc., to Plaintiff congratulating her on her "1-year anniversary with Family Dollar," is attached as Exhibit "10" [18-10] to Plaintiff's Answer [18] to the Motion to Compel. The Family Dollar, Inc., Mutual Agreement to Arbitrate Claims ("Agreement") that Defendants assert constitutes the arbitration agreement at issue here is attached to their Motion as Exhibit "A" [15-1]. The Court will refer to Plaintiff's employer generally as Family Dollar Store or the Company.

[2] The Complaint also asserted these claims against a former co-employee, Dasha Davis; however, Davis was not named as a Defendant. Compl. [1] at 3-5.

alternative that Plaintiff signed a valid arbitration agreement and thus seek to enforce the arbitration provision. Mot. [15] at 1-2; Mem. in Supp. [16] at 3-8.

Attached to the Motion is the Family Dollar, Inc., Mutual Agreement to Arbitrate Claims (the "Agreement") [15-1] which provides that the "Federal Arbitration Act (9 U.S.C. § 1 et. seq.) shall govern this Agreement, which evidences a transaction involving interstate commerce, and the Company and I agree that the Company is engaged in interstate commerce." Agreement, Ex. "A" [15-1] at 1. The Agreement further provides that "[t]he Company and I mutually consent and agree to the resolution by arbitration of all claims or controversies, past present or future ("Disputes") including without limitation, claims arising out of or related to my application for assignment/employment, assignment/employment, and/or the termination of my assignment/employment" including:

> (i) discrimination based upon race, creed, color, religion, sex, age, disability, leave status, national origin, ancestry, sexual orientation, marital status, veteran or military reserve status, privacy or any other characteristic protected by federal, state or local law, (ii) retaliation, including, but not limited to, whistleblower status or retaliation for filing a workers' compensation claim, (iii) torts, including, but not limited to, defamation, invasion of privacy, infliction of emotional distress, or workplace injury not otherwise covered by applicable workers' compensation laws, (iv) all employment related laws, including, but not limited to, Title VII of the Civil Rights Act, the Civil Rights Acts and Amendments of 1866, 1871, and 1991, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Equal Pay Act, Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, the Fair Labor Standards Act, and any amendments to these laws, and any such related or similar state or local laws, (v) any federal, state or local

4

> law or common law doctrine for breach of contract, promissory estoppel, wrongful discharge or conversion, (vi) claims for interference with rights under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or other claims concerning administration of ERISA plans not excluded below, and (vii) claims under federal or state law regarding wages (including without limitation claims for pay, minimum wage and overtime), wage penalties, meal and rest breaks, classification, reimbursement of expenses, compensation, stock or incentive bonus plans, or intellectual property rights and associated laws.

Agreement, Ex. "A" [15-1] at 1. The Agreement also provides that all disputes covered by the Agreement "shall be decided by an arbitrator through arbitration and not by way of court or jury trial" and defines covered disputes ("Disputes") to include

> [w]ithout limitation, claims arising out of or related to my application for assignment/employment, assignment/employment, and/or the termination of my assignment/employment that the Company my have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefits plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
> Further, covered Disputes include any claim or controversy regarding the agreement or any portion of the agreement or its interpretation, enforceability, applicability, unconscionability, *arbitrability* or formation, or whether the Agreement or any portion of the Agreement is void or voidable, with the exception noted in section 7 (sic), below, the "Class Action Waiver."

*Id*. at 1-2 (emphasis added).

In response to Defendants' Motion, Plaintiff filed an Answer [14] and Amended Answer [20] stating that although she is not opposed to arbitration, based

5

upon Defendants' refusal to respond to her prior attempts to resolve this dispute, should this case be "turned over for Arbitration, and no response is made than (sic) Plaintiff can continue with her suit, or if there is (sic) many postponements or can't reach an agreement." Answer [18] at 1-4.

## II. DISCUSSION

A. Relevant legal standards

"Congress enacted the FAA [Federal Arbitration Act] to overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quotations omitted). "To that end, § 2 [of the FAA] provides that arbitration agreements in contracts 'involving commerce' are 'valid, irrevocable, and enforceable.'" *Id.* (quoting 9 U.S.C. § 2). "[A]ll doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). "A valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quotation omitted). The Fifth Circuit has expressly held that discrimination and retaliation claims under Title VII may be subject to mandatory arbitration in employment agreements. *See, e.g., Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 747

(5th Cir. 1996); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991).

Section 4 of the FAA provides that "a party aggrieved by the failure of another party to arbitrate under a written agreement for arbitration may petition a federal court for an order directing that such arbitration proceed in the manner provided for in such agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quotations omitted). Ordinarily, courts employ a two-step analysis to determine whether to enforce an arbitration agreement by first determining whether the parties entered into a contractual arbitration agreement, and second whether the dispute at issue is covered by the arbitration agreement pursuant to contract law. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.*

> Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.
> Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause— that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.* at 202 (citing *Rent-A-Center,* 561 U.S. at 68-69).

Accordingly, the Court need only decide "first, whether the parties entered into a valid agreement to arbitrate *some* set of claims; and second, whether that agreement actually does contain a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold arbitrability issues." *Id.* (emphasis in original). When there is a valid delegation clause, the Court does not reach any arbitrability dispute and must refer the claims to arbitration. *Id.* at 204.

B.   Analysis

1.   There is a valid arbitration agreement between the parties.

"[T]he only issue at the first step is whether there is any agreement to arbitrate any set of claims," not "whether there is an agreement to arbitrate *the claim currently before the court.*" *Id.* (emphasis in original). Whether the parties entered into a valid agreement is governed by state law principles governing the formation of contracts. *Id.* (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). Under Mississippi law, whether a valid arbitration agreement exists is governed by whether the elements of a contract are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013) (quotation omitted).

8

In the present case, the record supports the conclusion that elements of a valid contract are present. It is undisputed that the parties signed the Agreement, which represents a sufficiently definite mutual agreement to arbitrate claims against each other arising out of Plaintiff's employment with Family Dollar Store. The Court finds that there is a valid contract between the parties that includes an agreement to arbitrate disputes.

Plaintiff does not appear to dispute that her claims should be arbitrated. Instead, she only expresses concern that because Family Dollar Store did not respond to her prior complaints or to her November 9, 2016, correspondence forwarding her "'right to sue' letter" with a demand for a response within 30 days, Family Dollar Store will likewise not respond "if the case is turned over for arbitration." Answer [18] at 3-4; Ex. "8" [18-8] at 1.

Having reviewed the documents produced by Plaintiff, it is clear that her prior attempts to have Family Dollar Store respond to her claims were not in accordance with the clear terms of the Mutual Agreement to Arbitrate Claims, which states in relevant part as follows:

> 4. HOW TO INITIATE ARBITRATION COVERED DISPUTES:
>
> The Company and I agree that the aggrieved party must make a written "Request for Arbitration" of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that applicable state or federal law proscribes for the claim. The parties are encouraged to make written Request for Arbitration of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

9

> Written Request for Arbitration to the Company, or its officers, directors, employees, or agents, shall be sent to its home office, currently at: Arbitration Intake, Family Dollar, PO Box 1017, Charlotte, NC 28201, to the attention of the Office of General Counsel. I will be given written Request for Arbitration at the last home address I provided in writing to the Company. The Request for Arbitration shall, unless otherwise required by law, clearly state "Request for Arbitration". (sic) The Request for Arbitration shall be sent to the other party by certified or registered mail, return receipt requested, and first class mail.

Agreement Ex. "A" [15-1] at 1-2.

Based upon her submissions, it appears that Plaintiff did not follow the procedure prescribed above for initiating an arbitration proceeding, which may explain why Family Dollar Store has not previously responded to Plaintiff. The Court cannot say that Family Dollar Store has breached the terms of the arbitration agreement in this respect.

Accordingly, the Court concludes that there is a valid arbitration agreement between the parties.

   2.   <u>There is a valid delegation clause which grants the authority to determine the arbitrability of Plaintiff's claims to an arbitrator.</u>

The Agreement contains a valid delegation clause transferring the determination of the arbitrability of Plaintiff's claims to an arbitrator. Agreement Ex. "A" [15-1] at 1-2. Thus the Court does reach the issue of whether Plaintiff's claims fall within the scope of the arbitration agreement. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 379 (5th Cir. 2016) ("Because the arbitration agreement contains a delegation clause, any disputes about the arbitrability of [Plaintiff's]

claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts.").

Based on the foregoing, Defendants' Motion to Dismiss and/or to Compel Arbitration [15] should be granted and Plaintiff's claims should be submitted to arbitration. Although questions about arbitrability must be decided by the arbitrator, the Court notes that all issues raised in this action may be subject to the arbitration provision such that dismissal of this civil action without prejudice is appropriate. *See Ruiz v. Donahoe*, 784 F.3d 247, 249–50 (5th Cir. 2015) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration") (emphasis in original)).

III. CONCLUSION

Defendants' Motion [15] to Dismiss and/or to Compel Arbitration [15] will be granted, the parties will be ordered to submit the disputed matter to arbitration. This matter will be dismissed without prejudice.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendants Robert Sasser, CEO, Dollar Tree Company Parent Company; Gary Philbin, President of Family Dollar Company, Subsidiary Company of Dollar Tree Company; Aaron Hendricks, District Manager of Family Dollar Company, Subsidiary of Dollar Tree Company; and Joe Young, Manager of Family Dollar Company, Subsidiary of

11

Dollar Tree Company's Motion [15] to Dismiss and/or to Compel Arbitration is **GRANTED**, and the parties are ordered to submit this dispute to arbitration,

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that this civil action is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 11th of September, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE